**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-cv-23054-BLOOM/Louis**

THEODORE MAXWELL,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

**<u>ORDER</u>**

      **THIS CAUSE** is before the Court upon Defendant Carnival Corporation's ("Defendant") Motion to Strike and/or Daubert Motion to Preclude Plaintiff from Introducing Any Evidence, Testimony, or Opinions from Plaintiff's Expert Witness at Trial, ECF No. [36] ("Motion"). Plaintiff Theodore Maxwell ("Plaintiff") filed a response, ECF No. [41] ("Response"), to which Defendant filed a reply, ECF No. [49] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion is granted in part.

**I.      BACKGROUND**

      On July 23, 2019, Plaintiff initiated the instant action against Defendant for personal injuries he sustained while onboard Defendant's cruise ship. ECF No. [1] ("Complaint"). The Complaint alleges that on September 8, 2018, while walking past Guy's Burger Joint on the Lido Deck of the *Carnival Liberty* cruise ship, Plaintiff "noticed a chair in the middle of the walkway." *Id.* ¶ 8. When Plaintiff went to walk around the chair, he "suddenly and unexpectedly slipped and fell[,]" thereby sustaining serious injuries. *Id.* ¶¶ 8, 13. Following his fall, "Plaintiff noticed that

he slipped in food and liquid that spilled onto the floor." *Id.* ¶ 8. Based on these allegations, the Complaint asserts a single count of maritime negligence against Defendant for "failing to properly inspect, maintain, and keep the flooring clean and dry, in an area where it knew passengers would be walking." *Id.* ¶ 11; *see generally id.*

Plaintiff retained Randall Jaques ("Mr. Jaques") as an expert witness to provide his opinion as to why Plaintiff "slipped and fell on a liquid slimy substance." ECF No. [36-1] at 3. Mr. Jaques is a marine safety and security consultant. *Id.* at 6. Between October 1991 and April 2007, Mr. Jaques served as a "Maritime Security and Safety Officer" for Defendant, Holland America Cruise Line (subsidiary of Defendant), V-Ships Maritime, Norwegian Cruise Line, and Disney Cruise Line. *Id.* at 4-6; *see also* ECF No. [41-5] at 3. Defendant moves to preclude the testimony and opinions of Mr. Jaques because he did not employ any recognized or reliable methodologies in arriving at his opinion, and his opinions are not helpful to the trier of fact. *See generally* ECF No. [36].

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the

application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

An expert in this Circuit may be qualified "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.* (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. June 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[1]

When determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261-62 (citation omitted) (quotation marks omitted). To make this determination, the district court examines: "(1) <u>whether</u> the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Id.* at 1262 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Thus, these factors are non-exhaustive, and the Eleventh Circuit has emphasized that alternative questions may be more probative in the context of determining reliability. *See id.* Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *Id.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

The final element, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Id.* (quoting *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Est. of Tessier*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

## III.   DISCUSSION

Defendant seeks to preclude Mr. Jaques from offering expert testimony based upon the opinions in his report, ECF No. [36-1]. Defendant contends that Mr. Jaques' opinions are unreliable because they lack any proper methodology, his opinions are unhelpful legal conclusions on the ultimate issues to be decided in this case, and do not provide any insight beyond that of a lay person. Defendant also points to numerous cases in the Southern District of Florida that have

precluded Mr. Jaques' expert testimony in whole or in part. Plaintiff opposes the Motion, relying primarily on Mr. Jaques' experience as a maritime security and safety officer for Defendant and other cruise lines, and Mr. Jaques' qualifications to render opinions regarding the standard of care when marking and responding to hazardous spills.

Mr. Jaques was asked to provide expert opinions as to why Plaintiff "slipped and fell on a liquid slimy substance." ECF No. [36-1] at 1. In formulating his opinions, Mr. Jaques relied on the Complaint, Mr. Jaques' interview with Plaintiff, photographs of the incident scene, and the deposition transcripts of Plaintiff and Defendant's corporate representative, Monica Borcegue ("Ms. Borcegue").[2] *Id.* at 6. As such, Mr. Jaques' report sets forth three expert opinions:

**Expert Opinion 1.**
Carnival Corporation has a reasonable duty to provide safety and care for its passengers. By not doing so, Carnival Corporation is at fault for allowing for a hazardous situation unforeseen to its passengers to exist. Carnival is fully aware of its own policy of "owning your own spill". Accidents are known to occur, which makes Carnival liable for not acting reasonable under the circumstances.

**Expert Opinion 2.**
Carnival Corporation is at fault for assuming passengers such as Mr. Maxwell are aware of the fact they are walking into a dangerous, hazardous situations when approaching a open pool.[3] Had there been at least a yellow cone and a security guard or crew members standing by then Mr. Maxwell could have been warned of a potential hazard. Again passengers are simply looking forward and not down, understanding that he/she will not be familiar with the unforeseen safety hazardous conditions in their path.

**Expert Opinion 3.**
Carnival knew of these SMS policies as testified by their own corporate representative Ms. Borcegue, and they chose to do nothing. By failing to take corrective action and instill adequate training, supervision and proper security

---

[2] During his deposition, Mr. Jaques testified that he also reviewed the passenger injury statement submitted by Krystal Dulmer on Plaintiff's behalf, Defendant's Answer to the Complaint, and Defendant's Interrogatory Responses. ECF No. [44-8] at 12:13-14:22.

[3] Mr. Jaques asked to withdraw this portion of his opinion, stating that the sentence should read: "Carnival Corporation is at fault for assuming passengers such as Mr. Maxwell are aware of the fact they are walking into a dangerous, hazardous situation when approaching a *spill*." ECF No. [44-8] at 46:4-49:13 (emphasis added).

Carnival is not only negligent, but not consistent with current Carnival Corporation SMS.

*Id.* at 8-9 (errors in original).

### 1. Reliability[4]

Defendant argues that Mr. Jaques' opinions are unreliable because they are based upon "pure speculation and conjecture" and not any valid methodology. ECF No. [36] at 9. Specifically, Defendant avers that Mr. Jaques' opinions on crewmembers' cleaning procedures are not founded upon any scientific data or proper methodology, "and are akin to conclusions such as 'it is so because I say it is so.'" *Id.* Plaintiff maintains that Mr. Jaques' opinions regarding Defendant's compliance with industry standards of care in marking and responding to hazardous spills are sufficiently reliable because they are based on Mr. Jaques' knowledge gained from years of experience as a maritime security and safety officer for Defendant and other cruise lines, which is "arguably [the] only methodology for this situation." ECF No. [41] at 8.

As an initial matter, the Court is not persuaded by Defendant's reference to cases within the Southern District that have precluded Mr. Jaques' expert testimony. These cases are distinguishable and, therefore, do not affect the Court's analysis regarding the reliability of Mr. Jaques' testimony.[5] Rather, the circumstances in the instant case are materially similar to those

---

[4] Because Defendant focuses solely on the reliability and helpfulness of Mr. Jaques' opinions, the Court assumes, for the purposes of this Motion, that Mr. Jaques satisfies *Daubert*'s qualification prong.

[5] *See, e.g.*, *Webb v. Carnival Corp.*, 321 F.R.D. 420, 430 (S.D. Fla. 2017) (precluding Mr. Jaques' from testifying on certain opinions that were "not tethered to any supporting materials or sources[.]"); *Farley v. Oceania Cruises, Inc.*, No. 13-20244-CIV, 2015 WL 1131015, at *7 (S.D. Fla. Mar. 12, 2015) (excluding Mr. Jaques' testimony where he did not "cite to or rely on any of the defendant's policies and procedures" and "attempt[ed] to impose on the defendant the policies and procedures adopted by other cruise line operators."); *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1123 (S.D. Fla. 2014) (precluding Mr. Jaques from testifying as a crowd control expert where, among other factors, he did not review photographs of the accident scene, did not review defendant's safety policies, and read only portions of defendant's corporate representative's deposition); *Mendel v. Royal Caribbean Cruises Ltd.*, No. 10-23398-CIV, 2012 WL 13129839, at *6 (S.D. Fla. Jan. 9, 2012), *report and recommendation adopted*, No. 10-23398-CIV, 2012 WL 13129834 (S.D. Fla. Feb. 22, 2012) (excluding Mr. Jaques' opinions that failed

described in *Higgs v. Costa Crociere S.p.A. Co.*, No. 15-60280-CIV, 2016 WL 4370012, at *6 (S.D. Fla. Jan. 12, 2016).

> The Court finds Jacques' opinions sufficiently reliable regarding Defendant's conformity to industry safety standards concerning floor-level obstructions on the date of Plaintiff's injury. Such opinions do not require detailed measurements or experiments. In formulating his opinions, Jaques relied on his personal inspection and pictures of the dining area where the incident occurred, a review of relevant discovery documents, and his extensive experience as a security officer for multiple cruise lines. According to the supplemental disclosures, Jaques also spoke with Plaintiff and at least one member of her family who witnessed the accident. DE 39-4 at 2. Although citations to specific safety regulations would have improved the reliability of Jaques' opinions, the Court does not find such citations essential in this instance.

Here, in forming his opinions, Mr. Jaques relied upon his years of experience as a maritime security and safety officer for Defendant and other cruise lines, in which he investigated over 2,000 shipboard accidents, including slip and falls. *See* ECF No. [41-5] at 1; *see also* ECF No. [44-8] at 81:5-19; 84:11-85:8. Mr. Jaques also relied upon his interview with Plaintiff, photographs taken of the incident scene, the passenger injury statement submitted on Plaintiff's behalf, and the depositions of Plaintiff and Ms. Borcegue. ECF No. [44-8] at 32:3-12; 79:23-80:6. While Mr. Jaques testified that he did not read, or receive a copy of, Defendant's spill policies, *id.* at 90:1-91:9, those materials were certainly not ignored. Indeed, the deposition of Ms. Borcegue sufficiently describes and sets forth Defendant's policies on responding to hazardous spills. ECF No. [41-6] at 20:12-29:16; 60:11-64:3. Thus, upon review of the record presented, the Court finds that Mr. Jaques' opinions regarding the industry standard of care, including Defendant's own policies, on marking and responding to hazardous spills are sufficiently reliable.

---

to set forth any methodology, and otherwise failed to establish why his experience is a sufficient basis for his opinions); *Johnson v. Carnival Corp.*, No. 07-20147-CIV, 2007 WL 9624459, at *7 (S.D. Fla. Dec. 19, 2007) (excluding Mr. Jaques' testimony where his expert report, among other factors, was "drafted by Plaintiff's attorney, who sent it to Jaques, who in turn made corrections to the report.").

## 2. Helpfulness

Regarding the helpfulness prong, the Court finds that Mr. Jaques' opinions and proffered testimony on cruise safety practices when marking and warning of hazardous spills, as well as Defendant's spill policies, are "beyond the common knowledge of the average lay person" and are "helpful in establishing the applicable standard of care for Plaintiff's negligence claim." *Higgs*, 2016 WL 4370012, at *5; *see also Webb*, 321 F.R.D. at 430 (finding proffered testimony on cruise safety practices and defendant's policies were beyond the understanding of an average layperson and helpful to the trier of fact); *see also Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180-81 (5th Cir. 1975) ("Evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence.").

However, the Court agrees with Defendant that portions of Mr. Jaques' opinions assigning fault to Defendant and indicating that Defendant had notice of the dangerous condition impermissibly opine on the ultimate legal conclusions at issue in this case. *O'Malley v. Royal Caribbean Cruises, Ltd.*, No. 17-21225-CIV, 2018 WL 2970728, at *4 (S.D. Fla. June 13, 2018) ("Mr. Gras' generic opinions are intertwined with legal conclusions that Defendant was negligent and that the vessel's personnel caused Plaintiff's injuries. Therefore, we conclude that Mr. Gras may not testify that Defendant was at fault or that Defendant breached its duty of care."); *Higgs*, 2016 WL 4370012, at *7 (concluding that Mr. Jaques' opinions that a defendant "is at fault" or that its crew is "careless," and testimony concerning the applicable legal standard, i.e., that a defendant is "legally required to exercise at least 'reasonable care the safety' of the passengers in question," all constitute unhelpful and impermissible legal conclusions that should be stricken). Accordingly, Mr. Jaques is precluded from testifying that Defendant is "at fault[,]" "liable[,]"

Case No. 19-cv-23054-BLOOM/Louis

"negligent[,]" "chose to do nothing" and "failed to take corrective action[.]" These statements in

Mr. Jaques' report shall also be stricken to the extent that it is admitted into evidence.

**IV.     CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [36]**,

is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 18, 2021.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

10