UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-23054-BLOOM/Louis

THEODORE MAXWELL,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's ("Defendant") Motion for Summary Judgment, ECF No. [37] ("Motion"), filed on January 7, 2021.[1] Plaintiff filed a response in opposition, ECF No. [43] ("Response"), to which Defendant filed a reply, ECF No. [50] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

    **I.**    **BACKGROUND**

On July 23, 2019, Plaintiff initiated the instant action against Defendant for personal injuries he sustained while onboard Defendant's cruise ship. ECF No. [1] ("Complaint"). The Complaint alleges that on September 8, 2018, while walking past Guy's Burger Joint on the Lido Deck of the *Carnival Liberty* cruise ship, Plaintiff "noticed a chair in the middle of the walkway." *Id.* ¶ 8. When Plaintiff went to walk around the chair, he "suddenly and unexpectedly slipped and

---

[1] Plaintiff urges the Court to strike the Motion because it was filed four minutes after the January 6, 2021 dispositive motion deadline. ECF No. [43] at 1-2. In the interest of resolving the Motion on the merits, the Court accepts the late-filed Motion.

fell[,]" thereby sustaining serious injuries. *Id.* ¶¶ 8, 13. Following his fall, "Plaintiff noticed that he slipped in food and liquid that spilled onto the floor." *Id.* ¶ 8. Based on these allegations, the Complaint asserts a single count of maritime negligence against Defendant for "failing to properly inspect, maintain, and keep the flooring clean and dry, in an area where it knew passengers would be walking." *Id.* ¶ 11; *see generally id.*

## II.  MATERIAL FACTS[2]

Plaintiff was a lawfully paying passenger aboard the *Carnival Liberty*, which is owned and operated by Defendant. ECF No. [38] ¶¶ 1-2; *see also* ECF No. [44] ¶ 1-2. On September 8, 2018, Plaintiff and his partner, Krystal Dulmer ("Ms. Dulmer"), were walking in the Guy's Burger Joint area of the Lido Deck. ECF No. [44] ¶ 6. Plaintiff noticed a chair in the walkway near the condiment station of the restaurant, changed his direction to walk around the chair, and slipped and fell on spilled food. ECF No. [37-1] at 44:1-45:25. The spilled food appeared to be rice and another soup-like substance. *Id.* at 45:18-23; *see also* ECF No. [37-2] at 75:7-18. Following Plaintiff's fall, Ms. Dulmer observed "dried steps" in the substance, as if "somebody else had already walked in it." ECF No. [37-2] at 69:19-25. Ms. Dulmer also observed crewmembers cleaning and spraying portions of the pool area of the Lido Deck at the time of Plaintiff's fall. *Id.* 53:21-54:19, 55:18-56:20.

Ms. Dulmer testified that despite Plaintiff's efforts to walk around the chair, "the spill was so big he slid in it." *Id.* at 62:1-21. According to Plaintiff, the food substance spanned across seven or more square lido deck tiles, each of which measure 30x30 centimeters. ECF No. [44] at ¶ 16; *see also* ECF No. [44-5] at ¶ 11. Plaintiff supports this rendition of the facts through photographs

---

[2] The parties' factual submissions include Defendant's Statement of Material Facts in Support of Motion, ECF No. [38], and Plaintiff's Response to Defendant's Statement of Material Facts and Additional Facts, ECF No. [44]. Based on the parties' respective statements of material facts, along with the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

of the incident scene taken by Ms. Dulmer approximately five to ten minutes after Plaintiff's fall. ECF No. [44-7].

During the deposition of Defendant's corporate representative, Monica Borcegue ("Ms. Borcegue"), Ms. Borcegue testified that crewmembers are instructed and trained to cordon off spills with a caution sign or anything else that could cover the spill, such as a chair, in accordance with Defendant's 2 Minute Trainer "Own the Spill" ("Own the Spill Policy"). ECF No. [37-3] at 25:16-27:21. The Own the Spill Policy provides, in pertinent part:

> Spills are very common in high traffic areas like Lido Restaurant / Beverage Stations, public areas like Bars & Lounges, and are one of the leading causes of Guest Accidents.

> In case of large spills ( one meter area or larger ) the area should be immediately cordoned off, and HK team contacted. Area may be cordoned off by using caution cones, or chairs if no cones are readily at hand.

*See* ECF No. [44-4].

According to Ms. Borcegue, Defendant's Policy serves both "aesthetic and safety purposes. . . . we don't want our ships to be messy, obviously, and it's for everybody's safety on board, both guest and crew." ECF No. [37-3] at 27:22-28:15. Ms. Borcegue testified that spills on the decks of Defendant's cruise ships are statistically the leading cause of guest accidents due to the high-traffic nature of the area, and explained that Defendant recognizes that cleaning and attending to spills are important to prevent slip and falls. *Id.* at 29:4-16, 31:11-25. During discovery, Defendant identified nineteen passengers who, during the three years preceding Plaintiff's incident, slipped and fell in the same area of the *Carnival Liberty* or in a similar area in other cruise ships of its class. ECF No. [44] at ¶¶ 13-15; *see also* ECF No. [44-5] at ¶¶ 6-7.

Defendant now moves for summary judgment, arguing that Defendant did not have actual or constructive notice of any dangerous condition.

## III.     LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant

summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

Initially, the moving party bears the "responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Mia., Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004) ("*One Piece of Real Prop.*"). Indeed, even "where the parties agree on the basic facts, but disagree about the factual

inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

In resolving the issues presented under Rule 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356. Moreover, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *see also Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct. 11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so."). Through this lens, the Court considers the Motion and the parties' arguments.

## IV. DISCUSSION

### A. General Maritime Negligence Claim

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320-21 (11th Cir. 1989)). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d

1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2006).

"A cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 796-97 (11th Cir. 2019) (quoting *Keefe*, 867 F.2d at 1322); *see also Looney v. Metro. R.R. Co.*, 200 U.S. 480, 486 (1906) ("A defect cannot be inferred from the mere fact of an injury. There must be some proof of the negligence."); *Miller v. NCL (Bah.) Ltd.*, No. 15-cv-22254, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers." (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959))), *aff'd*, 679 F. App'x 981 (11th Cir. 2017). Rather, "[u]nder maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015).

The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322.[3]

---

[3] "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id.* (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988)).

"In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio*, 785 F. App'x at 797. "Reasonableness of care, in turn, is measured by the extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and pose greater danger to the passenger." *Miller*, 2016 WL 4809347, at *4 (citing *Reinhardt v. Royal Caribbean Cruises*, No. 1:12-cv-22105, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013)).

### B. Actual Notice or Constructive Notice

To prove Defendant's duty of care, Plaintiff must first establish that Defendant had actual or constructive notice of the dangerous condition. *See Horne*, 741 F. App'x at 608 ("[I]n order to have a duty to warn of a danger, the cruiseline must have 'actual or constructive notice of the unsafe condition.' Moreover, there is no duty to warn of open and obvious dangers." (citation omitted)). "Actual notice exists when the shipowner knows of the unsafe condition." *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 920 (11th Cir. 2020) (citing *Keefe*, 867 F.2d at 1322). "A maritime plaintiff can establish constructive notice with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara*, 920 F.3d at 720 (quoting *Monteleone*, 838 F.2d at 65) (citing *Keefe*, 867 F.2d at 1322; *Rodgers*, 2009 WL 10666976, at *3).

Defendant contends that "Plaintiff has failed to provide even a scintilla of evidence that Carnival had actual or constructive notice of any alleged risk-creating condition." ECF No. [37] at 4. Specifically, Defendant argues that there is no record evidence regarding who placed the chair

in the walkway, the length of time that the substance was on the floor prior to Plaintiff's fall, or whether crewmembers were aware or notified of the substance on the floor prior to Plaintiff's fall. *Id.* at 5-6. Plaintiff, in opposition, responds that summary judgment is inappropriate because a reasonable factfinder could conclude that Defendant had actual or constructive notice of the dangerous condition by way of: (1) the chair placed over the substance in accordance with Defendant's Own the Spill Policy; (2) testimony regarding the condition of the substance; and (3) the presence of crewmembers working in the vicinity who should have seen the substance and responded accordingly. ECF No. [43] at 5-10. The Court, in viewing the facts in the light most favorable to Plaintiff, is satisfied that material factual disputes exist in this case.

First, with regard to actual notice, Plaintiff argues that a reasonable factfinder could conclude that a crewmember placed the chair over the substance prior to Plaintiff's fall because "the practice is consistent with Carnival's training and procedures on what do when large spills occur." *Id.* at 5. Plaintiff points to Defendant's Own the Spill Policy, which states that "[s]pills are very common in high traffic areas like Lido Restaurant . . . and are one of the leading causes of Guest Accidents[,]" and instructs crewmembers to "immediately cordon[] off" large spills "by using caution cones, or chairs if no cones are readily at hand." ECF No. [44-4]. Plaintiff also supports this theory by way of Ms. Borcegue's testimony that crewmembers are instructed and trained to place a chair, or an object large enough, over large spills if no caution cone is available. ECF No. [37-3] at 21:20-24:8, 25:16-26:21.

The Court is persuaded that a reasonable factfinder could make the logical inference that a crewmember placed the chair over the food substance in accordance with his or her specific training and Defendant's Own the Spill Policy. Here, there is evidence in the record that a chair was placed over a spill of food prior to Plaintiff's fall, that crewmembers were on the Lido Deck

9

cleaning and spraying portions of the pool area, and that the spill was large enough[4] to trigger a crewmember's response to cordon off the spill and take corrective action. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1267 (11th Cir. 2020) (stating that "[e]vidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition[]" and finding the defendant's "policy of keeping the chairs in-line and/or in the upright position and instructing employees to ensure that they are not blocking the walkway" was evidence "enough to withstand summary judgment on the issue of [defendant's] notice."); *see also Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1094 (S.D. Fla. 2014) ("As a result of the condensation, cleanup, and potential presence of warning cones, a reasonable jury could likely infer that Carnival was on notice of the potentially hazardous condition."). Accordingly, Plaintiff has raised a genuine issue of material fact as to whether Defendant had actual notice of the dangerous condition.

Next, Plaintiff advances two theories by which a reasonable factfinder could conclude that Defendant had constructive notice of the dangerous condition. First, Plaintiff cites to the deposition testimony of Ms. Dulmer, in which she testified that following Plaintiff's fall, she observed "dried steps" in the substance "like somebody else had already walked in it." ECF No. [37-2] at 69:19-25; *see also id.* at 72:22-73:4 ("And then you can tell some of the food had already dried up. You could see small little footsteps throughout the puddle."). Second, Ms. Dulmer also testified that she observed crewmembers cleaning the pool area of the Lido Deck at the time of Plaintiff's fall. *Id.* at 53:21-54:19, 55:18-56:20. Plaintiff maintains that Ms. Dulmer's testimony supports the inference that the substance had been in place for a period of time long enough for crewmembers

---

[4] The Own the Spill Policy defines "large spills" as a spill that is "one meter or larger." Plaintiff contends that the photographs of the spill reveal that it covered approximately seven square tiles, with each tile measuring 30x30 centimeters. This "equates to approximately seven square feet" and "is over twice as large as the one meter area indicated in Defendant's Own the Spill [Policy.]" ECF No. [43] at 5; *see also* ECF No. [44-7]. To the extent Defendant disputes the this was a "large spill" the Court draws reasonable inferences about the size of the spill in the light most favorable to Plaintiff.

to have discovered the condition, and that crewmembers were close enough in proximity to have seen the substance and remove the hazard.

Defendant argues that Plaintiff "offer[s] no facts of his own relating to the length of time that the food debris may have been on the deck surface prior to the time he came up on it." ECF No. [37] at 5. While Defendant seems to suggest that Plaintiff must present direct evidence of the length of time that the substance remained on the floor, that is not the appropriate standard. *See Pussinen v. Target Corp.*, 731 F. App'x 936, 937 (11th Cir. 2018) (circumstantial evidence may "give[] rise to an inference that the foreign substance had been on the floor for a sufficient length of time to charge the store owner with constructive knowledge of its presence." (quoting *Montgomery v. Fla. Jitney Jungle Stores, Inc.*, 281 So. 2d 302, 306 (Fla. 1973))); *see also Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 930 (11th Cir. 2018) ("Circumstantial evidence of the passage of time may include dirt, scuffing, or tracks in a substance.") (internal quotation marks omitted) (citation omitted).

Viewing the evidence in the light most favorable to Plaintiff, Ms. Dulmer's testimony that she observed dried steps in the substance following Plaintiff's fall indicates that the food spill was on the floor for a period long enough for at least one other person to walk through it and for Defendant to have constructive notice of the substance. *See Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1012 (11th Cir. 2019) ("evidence of footprints, prior track marks, changes in consistency, drying of the liquid" may tend to show that a substance was on the floor for enough time to impute constructive notice); *see also Snider-Hancox v. NCL Bahamas Ltd.*, No. 17-20942-CIV, 2018 WL 6308683, at *6 (S.D. Fla. Sept. 26, 2018) (plaintiff's testimony that the "'sticky liquid' which was dirty, grimy and had footsteps in it that were not hers" indicated that a genuine issue of material fact remained as to whether the defendant had constructive notice of the

dangerous condition).

Additionally, a review of the Lido Deck plan reveals that the pool deck and the Guy's Burger Joint are sufficiently close in proximity to support Plaintiff's position that the crewmembers, who were observed cleaning the pool deck at the time of Plaintiff's fall, should have seen the spilled substance or chair and take appropriate action. ECF No. [44-6]. Plaintiff's expert, Randall Jaques, also testified that, based on his experience as a maritime security and safety officer for Defendant and other cruise lines, the presence of a chair in the walkway should have been a "red flag" to crewmembers that there was a spill in the area. ECF No. [44-8] at 28:22-30:4; 37:7-38:12. As Plaintiff correctly notes, this is especially true given Defendant's Own the Spill Policy, which specifically instructs crewmembers to cordon off spills with a caution sign or chair, ECF No. [44-4], Defendant's acknowledgement that spills on the decks of Defendant's cruise ships are statistically the leading cause of guest accidents, ECF No. [37-3] at 29:4-16, and Defendant's knowledge of nineteen prior slip and fall accidents that occurred in the same area of the *Carnival Liberty* or in a similar area in another cruise ship of its class, ECF No. [44-5] at ¶¶ 6-7. *See Williams v. Carnival Corp.*, 440 F. Supp. 3d 1316, 1322 (S.D. Fla. 2020) ("Under these circumstances, and in light of Plaintiff's testimony, the pictures she provided, and that Carnival had multiple employees working close to the Red Frog Rum Bar trained to look for and remedy wet decks quickly, a reasonable jury could find that Carnival had constructive notice of the hazard."); *Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 536 (11th Cir. 2018) (the facts derived from plaintiff's testimony "place[d] the crewmember in the immediate vicinity of a puddle of soap that was one-and-a-half feet in diameter. Drawing all reasonable inferences in [plaintiff's] favor, a factfinder could conclude that the crewmember knew or should have known about the puddle of soap at his feet and either removed the hazard or warned [plaintiff] of it."). While it is certainly

possible that the substance was not on the floor long enough for crewmembers to have discovered it, or that the substance went undetected by the crewmembers in the vicinity, the Court, at this juncture, must draw all reasonable inferences in the light most favorable to Plaintiff. Resolution of Defendant's arguments challenging its constructive notice would require the Court to make impermissible credibility determinations and to weigh facts in evidence. Accordingly, the Court concludes that there are genuine issues of material fact regarding Defendant's notice of the dangerous condition.

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [37]**, is **DENIED** consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 18, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record